William GRUBY, George Hoffar, Andrew Alagna, Anthony Tafarella, Michael Salinari, Richard Gurleski, James Quinn and Joseph Calderone, individually and on behalf of all others similarly situated, Plaintiffs,

v.

James BRADY, Joseph Cincotta, John Conlon, Mark Compton, William Conlon, John Fitzgerald, Anthony Paretti, Anthony Rotoli, Richard D'Amico, Edward Hansen, Eugene Burke, Anthony Cognata, William Pike and John Does Nos. 1–99, individually and as trustees or former trustees of the Pension Fund of Local One of the Amalgamated Lithographers of America, the Administrator of the Pension Fund of Local One of the Amalgamated Lithographers of America, the Pension Fund of Local One of the Amalgamated Lithographers of America and Harold Faggen, Defendants.

No. 92 Civ. 3888 (SWK).

United States District Court, S.D. New York.

Nov. 30, 1993.

Rosen, Preminger & Bloom by David S. Preminger, New York City, for plaintiffs.

O'Melveny & Myers, by Robert N. Eccles, Thomas J. Karr, Washington, DC by Michael A. Curley, New York City, for trustee defendants.

Proskauer Rose Goetz & Mendelsohn by Myron D. Rumeld, New York City, for defendant Harold Faggen.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs, who are participants in the Pension Fund of Local One of The Amalgamated Lithographers of America (the "Fund"), bring this action, alleging that the defendants violated various sections of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs seek certification of their case as a class action. Defendants James Brady, Joseph Cincotta, John Conlon, Mark Compton, William Conlon, John Fitzgerald, Anthony Paretti, Anthony Rotoli, Richard D'Amico, Edward Hansen, Eugene Burke,[1] Anthony Cognata and William Pike (collectively, the "Trustee Defendants") oppose class certification and also move, pursuant to Federal Rule of Civil Procedure

---

1. The Court notes that defendant Eugene Burke has died since the commencement of this action. *See* Suggestion of Death Upon the Record Under Rule 25(a)(1), dated June 28, 1993.

12(b)(6), to dismiss plaintiffs' First, Second, Third, Sixth and Seventh Claims for Relief. In addition, defendant Harold Faggen ("Faggen") opposes class action status and moves to dismiss those portions of the complaint that allege claims against him, namely the Second and Eighth Claims for Relief.[2] For the reasons set forth below, plaintiffs' motion for class certification is granted. The Trustee Defendants' motions are disposed of as follows: (1) the motion to dismiss the Second, Third and Seventh Claims for Relief, on the ground that they fail to state a claim, is denied; (2) the motion to dismiss plaintiffs' Second, Third, Sixth and Seventh Claims for Relief, on the ground that they are time-barred under ERISA's six year statute of limitations, is granted to the extent that plaintiffs allege causes of action that took place prior to May 27, 1986, but plaintiffs may serve an amended complaint alleging fraud on or before December 24, 1993; (3) the motion to dismiss the First Claim for Relief is granted; (4) the motion to dismiss the Sixth Claim for Relief, to the extent it alleges a violation of section 406(b)(2), is denied; and (5) the motion to dismiss that portion of the Seventh Claim for Relief that alleges a violation of section 406(b)(2) is granted. Defendant Faggen's motion to dismiss the Second and Eighth Claims for Relief for failure to state a claim is granted to the extent that plaintiffs' causes of action against him seek monetary damages.

## BACKGROUND [3]

The Fund is a pension trust established in 1947 and funded solely by employee contributions. Plaintiffs consist of both retired members of Local One of the Amalgamated Lithographers of America (the "Union"), who currently receive pension benefits from the Fund, and active Union members who contribute to the Fund (collectively, the "Members"). The Trustee Defendants are current and former trustees of the Fund. Defendant Faggen was, until December 31, 1991, a consultant to the Fund, and allegedly consulted with the Trustee Defendants and the Administrator of the Pension Fund of Local One of the Amalgamated Lithographers of America (the "Fund Administrator") on all aspects of the Fund's administration.

Pursuant to the Fund's by-laws, employers of active Members are required to withhold five percent of each member's gross pay, and to remit such withholdings to the Fund. Retirement benefits are paid as a monthly annuity out of these contributions. In 1973, the Fund's benefit formula provided for a monthly pension benefit equal to 2.55 percent of a Member's aggregate lifetime contributions. This benefit amount subsequently was increased to 3 percent in 1980, 3.15 percent in 1983, and 3.3 percent in 1986.

Plaintiffs allege that each of the increases in monthly pension benefits were proposed by those defendants who were then trustees of the Fund, and that the defendants assured the Members that each increase was prudent and financially responsible. According to plaintiffs, the Members relied on these assurances when they approved each increase by referendum vote. Nonetheless, plaintiffs now contend that the Trustee Defendants rendered these assurances either without the benefit of professional assistance, or contrary to professional advice. Plaintiffs argue further that

had the assistance of a qualified professional been sought, any such qualified professional would have counseled against the aforesaid increases in the monthly pension benefit because, *inter alia:* (i) the 1973 benefit formula was more generous than the Pension Fund could afford and any increase would have been imprudent; (ii) the number of members who were contributing to the Pension Fund was decreasing while the number of members who were receiving benefits was increasing; (iii) the return on principal which the Pension Fund was receiving was insufficient to support the various monthly pension benefit levels in effect from 1973 to the present; and (iv) absent a reduction in the monthly pension benefit level and/or a substantial

---

**2.** Defendant Faggen also joins in the Trustee Defendant's motion to dismiss.

**3.** For purposes of this Opinion, the facts alleged in the complaint are accepted as true. *See Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir.1991).

increase in the return on principal, the Pension Fund's assets would be depleted in the near future and numerous members would lose some or all of their benefits. Complaint, ¶ 35.

### The Fund's Financial Difficulties

In December 1989, defendant Edward Hansen ("Hansen"), then chairman of the board of trustees of the Fund and president of the Union, sent a letter to the Members stating that the Fund was "solvent and secure." Plaintiffs contend that this statement was untrue and known to be untrue by Hansen, Faggen "and other defendants." Complaint, ¶ 37.

On July 17, 1991, the Members were notified for the first time that the Fund was experiencing financial difficulties. Thereafter, on January 14, 1992, defendant James Brady ("Brady"), Hansen's successor, informed the Members that the Fund's financial situation "was far more serious than originally anticipated" because of a decrease in the number of Members actively employed and an increase in the number of Members receiving pensions. Complaint, ¶ 39. Members were told that the Fund had terminated defendant Faggen, effective December 31, 1991, and had retained the firm of Martin E. Segal Company to develop suggestions for ameliorating the Fund's financial difficulties.

Thereafter, the board of trustees sent a report to the Members suggesting that they vote to either terminate the Fund or reduce the monthly pension benefits level from 3.3 percent to 1.85 percent of aggregate lifetime contributions. On March 28, 1992, the Members voted not to conduct a referendum on the options proposed by the board of trustees.

### The Complaint

On May 27, 1992, plaintiffs brought this action, alleging that the failure of the Fund

Administrator to provide documents and other information requested by plaintiffs constitutes a breach of the Fund Administrator's duties (First Claim for Relief).[4] Plaintiffs also allege that the Trustee Defendants and defendant Faggen (collectively, the "defendants") breached their fiduciary duties, set forth in ERISA § 404(a)(1)(B), by: (a) establishing excessive levels of pension benefits; (b) failing to alleviate any problems caused by these excessive benefit levels; (c) failing to properly monitor the Fund's financial condition; (d) failing to inform Members of the Fund's financial condition; (e) failing to inform Members of the potential consequences of increasing the Fund's benefit levels; (f) lying to Members about the Fund's financial condition; and (g) failing to engage the services of appropriate professional consultants, or failing to follow the advice of those professional consultants retained (Second Claim for Relief).

The Third Claim for Relief alleges that the current trustees breached their fiduciary duties, set forth in ERISA §§ 404(a)(1)(A)(i) and (B), by failing to provide Members with adequate information upon which to base decisions as to (a) the appropriate level of pension benefits; and (b) an appropriate solution to the Fund's financial problems.

Plaintiffs' Sixth Claim for Relief alleges that the Trustee Defendants violated ERISA §§ 404(a)(1)(A)(i) and 406(b)(2) by failing to collect from employers monies withheld from the gross pay of active Members, out of concern for the continued viability of the employers as Union members, and/or for consideration for Union concerns in future collective bargaining. The complaint also alleges that the Trustee Defendants violated ERISA §§ 404(a)(1)(A)(i), (ii), (B) and 406(b)(2) by increasing the level of pension benefits despite knowing that such increases were imprudent, and without informing the Members of the Fund's adverse financial circumstances, in order to assist themselves in

---

4. Plaintiffs contend that they requested particular documents by letter, dated April 9, 1992. In response, attorneys for the Fund provided several documents and indicated that "[t]he Fund is under no obligation to produce the other documents requested." Complaint, ¶ 51. Furthermore, in their opposing papers, plaintiffs concede that the Trustee Defendants have since provided much of the requested material. See Plaintiffs' Memorandum of Law In Opposition To Defendants' Motions To Dismiss ("Opp. Papers"), dated May 3, 1993, at 24. Accordingly, plaintiffs' First Claim for Relief is dismissed. See Discussion, supra, 23–25.

being elected or re-elected as Union officers (Seventh Claim for Relief). The Eighth Claim for Relief alleges that, if defendant Faggen was not a fiduciary of the Fund, he knowingly participated in each of the breaches of fiduciary duty set forth in the Second, Sixth and Seventh Claims for Relief.[5]

Plaintiffs seek an order compelling the defendants to "make good to the [Fund] all losses of principal and interest to the [Fund] arising from said defendants' failure and refusal to collect from employers monies withheld from the gross pay of the members and not remitted to the [Fund]." Complaint ¶ F. In addition, plaintiffs seek an order requiring the defendants to pay damages to the Fund in an amount necessary to fund pension benefits at the 3.3 percent level. Complaint ¶ H.[6]

## DISCUSSION

### I. Class Certification

Plaintiffs move, pursuant to Federal Rule of Civil Procedure 23, to have this action certified as a class action consisting of "all persons, other than defendants, who, as of May 29, 1992, were participants in and/or beneficiaries of the Pension Fund of Local One of the Amalgamated Lithographers of America" (the "proposed class"). The proposed class thus embodies both active and retired members of the Fund.

In order to qualify for class action status, plaintiffs initially must establish that (1) the class is so numerous that joinder of all mem-

bers is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the proposed class representatives will fairly and adequately protect the interests of the proposed class. See Fed. R.Civ.P. 23(a). The defendants do not dispute that plaintiffs have satisfied the requirements of numerosity and commonality with respect to the proposed class. Accordingly, the Court shall only consider the third and fourth elements of Rule 23(a): adequacy and typicality.

### A. Adequacy of Representation

The adequacy of representation component is met if the Court finds that (1) the representative party's attorney is qualified, experienced and generally able to conduct the litigation; and (2) plaintiffs' interests are not antagonistic to those of the remainder of the class. O'Neil v. Gencorp, Inc., No. 88 Civ. 8498, 1991 WL 33316 at *5, 1991 U.S.Dist. LEXIS 2475, at *13 (S.D.N.Y. Mar. 1, 1991). Defendants do not dispute that plaintiffs' attorneys are qualified and experienced. Defendants contend, however, that plaintiffs' interests are adverse to those of the proposed class. In support of this proposition, defendants argue that the competing interests of retired and active Members would preclude any fair allocation of damages. Defendants also conclude that, as several trustees were re-elected to Union office, a majority of the members of the proposed class do not share the goals and

---

**5.** By Order To Show Cause, dated June 29, 1992, plaintiffs sought a preliminary injunction, based on their Fourth Claim for Relief, alleging that the current trustees' intention to impose a unilateral reduction in the level of benefits would constitute a breach of their fiduciary duties, pursuant to §§ 404(a)(1)(A)(i), (B) and (D). On July 23, 1992, the Court entered an Order denying the plaintiffs' application for a preliminary injunction and holding that the Trustee Defendants could implement the proposed benefit reduction as of August 1, 1992. Accordingly, the level of pension benefits was reduced from 3.3 percent to 1.7 percent. Thereafter, on January 15, 1993, a Special Master, appointed to determine the appropriate level of benefit reductions, issued a Report and Recommendation concluding that the 1.7 percent benefit level was appropriate. On February 26, 1993, however, the parties agreed to hold the Special Master's Report in abeyance

while the plaintiffs continued to pursue their remaining claims. As a result, the Court has not yet acted on the Special Master's Report.

The Fifth Claim for Relief alleges that the current trustees' intention to hire additional professionals, if effected, would waste the assets of the Fund and violate ERISA §§ 404(a)(1)(A)(i), (ii) and (B). The defendants' motions do not address either the Fourth or Fifth Claims for Relief.

**6.** Plaintiffs also seek declaratory and injunctive relief, and attorney's fees. See Complaint, ¶¶ A–E, G, I, K–N, P. While plaintiffs initially sought a civil penalty of $100.00 per day for each day after May 9, 1992 that the Fund Administrator failed to provide any of the documents or information requested, plaintiffs have withdrawn this prayer for relief. See Opp. Papers at 24.

viewpoints of the named plaintiffs. The Court finds neither of the defendants' contentions persuasive.

First, the Court finds that certification of plaintiffs' claims is not defeated by the presence of both retired and active Members in the proposed class. *See Probe v. State Teachers' Retirement Sys.,* 780 F.2d 776, 781 (9th Cir.) (upholding class certification and finding that no conflict exists between retired teachers seeking increased benefits and currently employed teachers who will theoretically have to pay such benefits), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986); *Church v. Consolidated Freightways, Inc.,* No. C–90–2290, 1991 WL 284083 at *5–6, 1991 U.S.Dist. LEXIS 15419, at *15 (N.D.Cal. June 14, 1991) (the presence of former and current employees in the proposed class does not create a conflict for purposes of a class action). While the interests of retired and active Members may have diverged with respect to whether benefits levels should have been reduced in light of the Fund's current financial crisis, all Fund Members seek the make-whole relief claimed by the named plaintiffs for breach of the defendants' fiduciary duties, as well as monies allegedly owed to the Fund by employers. Moreover, the Court notes that, as any recovery under section 502(a)(2), 29 U.S.C. § 1132(a)(2), goes to the Fund as a whole, and as Fund participants may bring an action only in a representative capacity on behalf of the entire Fund, the proposed class must include all Fund participants, including retired and active Members. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, n. 9, 105 S.Ct. 3085, 3090 n. 9, 87 L.Ed.2d 96 (1985).[7]

Second, the Court finds the defendants' conclusion that the fact that certain trustees won re-election to Union office indicates that members of the proposed class do not share the named plaintiffs' viewpoints to be speculative at best. As set forth in plaintiffs' Reply Memorandum of Law In Support of Their Motion for Class Certification, dated July 21, 1993, at 4–5, more than one issue predominated the Union election. In fact, defendants may have won Union office because of issues that pertained solely to the Union, and not because of issues concerning the Fund. Alternatively, Fund issues may have been dispositive to some, but not all, voters. In any event, "class certification should not be denied by speculative suggestions of potential conflicts." *Breedlove v. Tele–Trip Co.,* No. 91 C 5702, 1993 WL 284327 at *7, 1993 U.S.Dist. LEXIS 10278, at *20 (N.D.Ill. July 26, 1993).[8] Accordingly, the Court finds that plaintiffs will adequately represent the interests of the proposed class.

**B. Typicality**

Defendants also contend that the claims of the named plaintiffs are not typical of the claims of the proposed class. "Generally, the typicality requirement is met if the plaintiffs' claims arise out of the same events or course of conduct that give rise to the claims of the other class members and if it is based on evidence and legal theories consistent with the other members' claims." *O'Neil v. Gencorp, Inc.,* 1991 WL 33316 at *3, 1991 U.S.Dist. LEXIS 2475, at *5.

Defendants argue that there is no "typical" injury here, as the reduction in benefits levels has had widely differing impacts on individual Fund Members. The Court disagrees. While retired Members may have enjoyed a windfall in the form of excessive benefits in the past, all plaintiffs now suffer from reduced benefits levels as a result of the defendants' alleged breach of their fiduciary duties. Moreover, even if the amount of damages due each individual Member varies, the legal theories and course of conduct upon

---

7. *See* Discussion, *supra,* 17–18.

8. Even if a conflict was found to exist, the Court need not necessarily deny class certification.

 A court may certify a class where the unnamed class plaintiffs, whose interests are antagonistic to other members of the class, are adequately represented by defendants in a class action.... In addition, the court may create subclasses or exclude a sub-group from the class definition.... In addition, the court can certify the class conditionally to provide time for disagreement among class members to become clear, or the court can decertify a class if it becomes apparent that the representation is inadequate.

 *Breedlove v. Tele–Trip Co., Inc.,* 1993 WL 284327 at *7–8, 1993 U.S.Dist. LEXIS 10278, at *22.

which this suit is based is consistent for all Members. Accordingly, the Court finds that plaintiffs' claims are typical of those of the proposed class.

## C. Rule 23(b)

To be maintained as a class action, a suit must meet, not only the prerequisites of Rule 23(a), but also the additional requirements of one of the subdivisions of Rule 23(b). While plaintiffs argue that class certification is proper in this case under all three components of Rule 23(b), they ask the Court to certify the proposed class under Rule 23(b)(1) or 23(b)(2), rather than Rule 23(b)(3).

Rule 23(b)(1)(B) provides that class certification is proper where the prosecution of separate actions by individual members of the class would create a risk of adjudications "which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Fed.R.Civ.P. 23(b)(1)(B). As plaintiffs are seeking relief on behalf of the Fund as a whole, the Court finds that prosecution of separate actions by individual Members would, indeed, create a risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications. "Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly." *Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 478 (S.D.Ga.1991). Accordingly, the Court finds that class certification is proper under Rule 23(b)(1)(B).[9]

## II. Motions to Dismiss

### A. Standards of Law

■ The Trustee Defendants move, pursuant to Rule 12(b)(6), for an order dismissing the Second, Third and Seventh Claims for Relief on the grounds that they fail to state a claim upon which relief can be granted. It is well settled that, when passing on a

motion to dismiss, the Court must accept the allegations of the complaint as true and construe them in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### B. The Trustee Defendants

#### 1. Failure to State a Claim

■ ERISA is a comprehensive statute enacted to protect the interests of participants in employee benefit plans and their beneficiaries "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." ERISA § 2(b), 29 U.S.C. § 1001(b). Section 404 of ERISA, 29 U.S.C. § 1104, sets forth a fiduciary's basic duties, as derived from traditional trust law principles. Pursuant to this section, fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Whitfield v. Tomasso*, 682 F.Supp. 1287, 1301 (E.D.N.Y.1988). Thus, as fiduciaries, the Trustee Defendants have a duty to act with care, skill, prudence and diligence in their management of the Fund. *See id.*

■ ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a beneficiary to bring an action against a fiduciary who has violated section 409(a). Section 409(a) provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title *shall be personally liable to make good to such plan any losses to the plan resulting from each such*

---

**9.** As class certification is proper under Rule 23(b)(1)(B), the Court need not determine wheth-

er plaintiffs have also satisfied the requirements of Rule 23(b)(2) or Rule 23(b)(3).

*breach,* and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, *and shall be subject to such other equitable or remedial relief as the court may deem appropriate,* including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). Despite its broad language, however, the United States Supreme Court has interpreted section 409(a) as providing a limited, rather than a broad means of relief. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147–148, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985). Thus, section 409(a) authorizes relief only when a fiduciary has breached one of its duties to an employee benefit plan as defined by ERISA. *Amalgamated Clothing & Textile Workers Union v. Murdock,* 861 F.2d 1406, 1413 (9th Cir.1988). Moreover, this section authorizes relief only for the "benefit of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. at 140, 105 S.Ct. at 3089. According to the Ninth Circuit:

> The [Supreme] Court rejected the *Russell* plaintiff's request to create an individual remedy for damages under § 409(a) because that type of remedy was not consistent with ERISA's emphasis on the relationship between a fiduciary and the employee benefit plan as a whole. A fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA. Moreover, while mistakes in handling one claim may interfere with one person's benefits under a plan, they do not jeopardize the entire plan or put at risk plan assets, which must be safeguarded to protect all beneficiaries.

*Amalgamated Clothing & Textile Workers Union v. Murdock,* 861 F.2d at 1414 (citations omitted).

### a. Breach of Fiduciary Duty

██ The Trustee Defendants move to dismiss Counts Two, Three and Seven of the complaint on the ground that these counts fail to state a claim for breach of fiduciary duties. Plaintiffs' Second, Third and Seventh Claims for Relief allege that the Trustee Defendants breached their fiduciary duties by raising, or failing to reduce, benefits levels. Although the Trustee Defendants concede, for purposes of this motion, that maintaining benefits at excessive levels constitutes a breach of fiduciary duties, *see* Reply Memorandum In Support of Motion to Dismiss of the Trustee Defendants, dated May 19, 1993, at 7, they contend that, as a matter of law, they have not breached their fiduciary duties by paying out benefits at the 3.3 percent level, as they merely were following the terms of the Fund's governing plan documents.

ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with plan documents only "insofar as such documents and instruments are consistent with the provisions of [ERISA]." Accordingly, if the benefits levels as set forth in the Fund's governing plan documents are excessive, the Trustee Defendants may not avoid their fiduciary duties to Members by hiding behind documents which are inconsistent with ERISA. Accordingly, the Court finds that plaintiffs have stated a cause of action for breach of fiduciary duties.

### b. Loss to the Entire Fund

██ The Trustee Defendants argue further that Counts Two, Three and Seven of the complaint fail to state a claim because they do not allege a loss to the Fund as a whole. In support of this contention, defendants argue that, even if the 3.3 percent benefits level was excessive, the retired Members who received benefits at this level reaped a gain. Accordingly, defendants contend that only a subset of Members can allege a loss. The Court finds, however, that plaintiffs have adequately alleged a loss to the Fund as a whole.

As an initial matter, the Court finds that the injury alleged in the complaint is directed against the Fund, and not against particular beneficiaries. Thus, the complaint alleges that the defendants breached their fiduciary duties by increasing benefits when they should not have, and failing to recognize that benefit levels were higher than could be supported by the Fund's assets and income. Complaint, ¶¶ 35, 59. Because of this breach, the complaint alleges further that the Fund

has incurred losses in the form of depletion of assets. *Id.*, ¶ 42. These allegations clearly concern injury to the Fund as a whole. Moreover, the fact that certain retired Members allegedly received a windfall during the time in which they collected benefits at the 3.3 percent level does not obviate the fact that they now are injured by reduced benefits payouts, or that the Fund as a whole has been injured in the form of depletion of assets.

While the Trustee Defendants also argue that "[b]y paying out benefits at reduced levels, the [Fund] is preserving, not wasting or losing, its assets," this contention is simply irrelevant to the allegations of the complaint. The complaint alleges that the loss to the Fund occurred when benefits payouts were maintained at excessive levels, not when the defendants reduced benefit levels to the current 1.7 percent level in recognition of the Fund's financial problems. Accordingly, the Court finds that plaintiffs have alleged injury to the Fund as a whole.

### c. Equitable Nature of Relief

 The Trustee Defendants argue further that plaintiffs' claims should be dismissed because the relief they seek is inequitable, as the retired Members benefited from the former 3.3 percent benefits level. The Court finds, however, that this argument lacks merit. Plaintiffs seek damages in order to restore assets that were depleted when the Trustee Defendants allegedly breached their fiduciary obligations. Such relief would ensure that all Members, active and retired, would receive benefits at the expected level. The Court fails to see anything inequitable about such a claim for relief. Accordingly, the Court finds that plaintiffs have stated a cause of action for violation of ERISA section 502(a)(2).[10] Thus, the Trustee Defendants' motion to dismiss Counts Two, Three and Seven of the complaint for failure to state a claim is denied.

### 2. Statute of Limitations

 The Trustee Defendants next contend that plaintiffs' claims are barred by the statute of limitations to the extent they are based on benefit increases that took place prior to May 27, 1986. Claims for relief under ERISA are governed by ERISA section 413(a), 29 U.S.C. § 1113(a), which states:

No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation . . .

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

As the Trustee Defendants have not shown that plaintiffs had either actual or constructive knowledge of the breach or violation, the statute of limitations period runs from the date of the breach or violation, unless plaintiffs have adequately alleged fraud or concealment. *See Fink v. National Sav. and Trust Co.*, 772 F.2d 951, 956 (D.C.Cir.1985).

 Plaintiffs contend that, while their claims are based, in part, on activities that took place in 1973, 1980 and 1983, the Trustee Defendants have continually breached their fiduciary duties since that time by failing to monitor the Fund's financial condition, and failing to recognize that the benefit levels in existence "from time to time" were excessive. *See* Complaint, ¶¶ 36, 59(b), (c). Thus, plaintiffs contend that none of their claims are barred, as the "last action which constituted part of the breach or violation," *i.e.*, the last time the defendants paid out benefits at the 3.3 percent level, did not occur until June 1992. The Court disagrees.

Whether any of plaintiffs' claims are time-barred depends on whether the Trustee De-

---

**10.** Having found that plaintiffs have adequately stated a claim for breach of fiduciary duty pursuant to 502(a)(2), the Court finds that plaintiffs have also adequately stated a claim for breach of fiduciary duty, pursuant to 502(a)(3). *See Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d at 1417.

fendants engaged in one "continuous" violation, or separate, "repeated" breaches of duty. *See Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1088 (7th Cir.1992). While as Fund fiduciaries, the Trustee Defendants are under a continuing obligation to monitor the Fund's financial condition and ensure that benefits payments are not excessive, *see Buccino v. Continental Assur. Co.,* 578 F.Supp. 1518, 1521 (S.D.N.Y.1983), the Court finds that the defendants' failure to do so gave rise to a new cause of action each time the Fund was injured, that is, each time excessive benefit payments were made. Accordingly, pursuant to the basic ERISA limitation period of six years, those causes of action that occurred before May 27, 1986 are time-barred.

Plaintiffs argue further, however, that they have adequately alleged fraud and concealment to warrant application of the fraud exception to the statute of limitations rule. The elements of common law fraud consist of:

1) a material false representation or omission of an existing fact, 2) made with knowledge of its falsity, 3) with an intent to defraud, and 4) reasonable reliance, 5) that damages plaintiff.

*Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 276 (2d Cir.1992).

Here, plaintiffs assert that the Trustee Defendants lied "to the members about the financial condition of the Pension Fund." Complaint, ¶ 59(f). Plaintiffs also assert that certain statements made by defendant Hansen in a December, 1989 letter to Members "were untrue and were known to be untrue by defendant Edward Hansen, defendant Harold Faggen and other defendants at the time they were made." Complaint, ¶ 37. The Sixth Claim for Relief alleges that the Trustee Defendants refused to collect from employers monies withheld from the gross pay of active Members out of concern for the viability of the Union. Moreover, the Seventh Claim for Relief alleges that the Trustee Defendants caused an increase in the level of benefits, despite their knowledge that such increases were imprudent, and without informing the Members of the Fund's adverse financial circumstances, in order to assist their election efforts. Such allegations are sufficient to give rise to an inference of fraudulent knowledge and intent.

However, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Although plaintiffs concede that they are unable at this juncture to ascribe particular acts to particular defendants, *see* Opp. Papers at 23, n. 15, they argue that they need not do so as each defendant is liable for the other's acts of fraud under ERISA's co-fiduciary liability rule, set forth in ERISA section 405.

The Court finds that plaintiffs' reliance on the co-fiduciary liability rule is misplaced. Plaintiffs ignore the fact that co-fiduciary liability arises only in limited circumstances, namely where the fiduciary

(1) ... participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by the fiduciary's failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105. Plaintiffs have failed to allege sufficient facts linking the liability of each fiduciary to the others. Accordingly, section 405 does not relieve plaintiffs of their responsibility to inform each defendant of the nature of his or her alleged participation in the fraud. *See Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1207 (S.D.N.Y.1992). As the Court finds that the statute of limitations has not been tolled because of fraud or concealment, plaintiffs' claims are time-barred to the extent they allege causes of action that took place prior to May 27, 1986. However, plaintiffs may cure this deficiency by serving an amended complaint up to and including December 24,

1993, informing each defendant of the nature of his alleged participation in the fraud. *See* Fed.R.Civ.P. 15.

### 3. Failure To Furnish Documents

Plaintiffs' First Claim For Relief alleges that the failure of the Fund Administrator to provide documents and other requested information constitutes a breach of the Fund Administrator's ERISA duties. While plaintiffs have indicated that they are prepared to withdraw their claim insofar as it seeks daily civil penalties, *see* Opp. Papers at 24, they argue that a viable claim against the Fund Administrator for breach of fiduciary duty remains. For the reasons set forth below, plaintiffs' First Claim for Relief is dismissed.

■ In recognition of the fact that responses to requests for pension information are taxing on pension fund officials and costly to the pension fund itself, the ERISA statute contains numerous provisions specifying the documents and information a plan administrator must provide to plan members. *See* ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). *See also Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. 1430, 1457 (S.D.N.Y.1983). ERISA does not require plan officials to furnish information other than that specified by statute. *Chambless v. Masters, Mates & Pilots Pension Plan,* 571 F.Supp. at 1457.

■ Plaintiffs contend that the Trustee Defendants breached their fiduciary duties by failing to provide the information requested. However, plaintiffs have failed to establish that the requested information was within the scope of ERISA's disclosure provisions. While plaintiffs point to the fact that this Court ordered the Trustee Defendants to provide some of the requested information during the course of this lawsuit, such disclosure does not mean that the defendants were required to turn over the information in the first instance. "The 'relevance' standard of Rule 401, F.R.Evid., is far more generous to the participant seeking information than are the specific standards that Congress set forth in ERISA." *Id.* Accordingly, the Court finds that plaintiffs have failed to state a claim for breach of fiduciary duty with

respect to the failure of the Fund Administrator to provide documents.

■ Furthermore, even if plaintiffs had stated a valid claim for relief, the Court finds that they have set forth no means of redress for failure to provide the documents requested. Generally, pension fund members have two alternative ways to obtain redress for violations of those sections of ERISA that require fund administrators to make information available. *See Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618, 621 (7th Cir.1987). First, pursuant to section 502(a)(3), members may force the administrator to comply with the provisions of ERISA and make available the information they seek. In the alternative, pursuant to section 502(c), a court, in its discretion, may penalize an administrator up to $100 per day for each day the administrator fails to comply with ERISA disclosure requirements. *Id.*

Plaintiffs concede that the defendants have provided much of the requested material since the advent of this lawsuit, thereby rendering the first alternative means of redress moot. Moreover, plaintiffs have indicated that they are prepared to withdraw their claim for statutory penalties. While the Court acknowledges that ERISA grants it wide discretion to fashion appropriate relief, *see Schoenholtz v. Doniger,* 657 F.Supp. 899, 902 (S.D.N.Y.1987), plaintiffs have failed to seek any additional form of relief for violation of section 502(c). Accordingly, the Trustee Defendants' motion to dismiss the First Claim for Relief is granted.

### 4. Violation of Section 406(b)(2)

Plaintiffs allege that the Trustee Defendants violated section 406(b)(2) by: (1) failing to collect monies from employers withheld from the gross pay of Members "out of concern for the continued viability of said employers as employers for Union members and/or for consideration for Union concerns in future collective bargaining," *see* Complaint, ¶ 67 (Sixth Claim for Relief); and (2) increasing benefit levels "in order to assist such Trustees in being elected or re-elected as Union officers," *see* Complaint, ¶ 68 (Seventh Claim for Relief). The Trustee Defendants seek to dismiss these causes of action, contending that none of the facts alleged

violate section 406(b)(2). For the reasons that follow, the Court dismisses that portion of the Seventh Claim for Relief that alleges a violation of section 406(b)(2), but finds that plaintiffs' Sixth Claim for Relief states a valid cause of action for violation of section 406(b)(2).

Section 406(b)(2) provides that a fiduciary shall not "in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." 29 U.S.C. § 1106(b)(2). The Second Circuit has read this section narrowly, holding that a transaction between the plan and a party having an adverse interest is required. *See Donovan v. Bierwirth,* 680 F.2d 263, 270 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).[11] "[F]or the provisions of 29 U.S.C. § 1106 to apply, there must be a transaction involving the monies, property, or other assets of the fund." *Amato v. Western Union Int'l, Inc.,* 596 F.Supp. 963, 969 (S.D.N.Y.1984) (quoting *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.,* 567 F.Supp. 1184, 1199 (N.D.W.Va.1983), *aff'd,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984)), *aff'd in part and rev'd in part on other grounds,* 773 F.2d 1402 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

█ The Court finds that plaintiffs' Sixth Claim for Relief states a valid claim for violation of section 406(b)(2). Clearly, Fund employers are parties with interests adverse to those of plan Members. Indeed, the employers' interests lie in minimizing their obli-

gations to the Fund, whereas the Fund's interest is in collecting all contributions owed. Moreover, the employers' obligation to contribute to the Fund constitutes a transaction involving Fund assets. By forbearing from collecting monies owed the Fund in order to protect the financial viability of employers, or in return for other consideration in collective bargaining, the Trustee Defendants acted on behalf of the employers, and to the detriment of the Fund. Accordingly, plaintiffs Sixth Claim for Relief is valid.

█ The Court finds, however, that plaintiffs' Seventh Claim for Relief fails to allege a transaction between the plan and a party having an adverse interest. In fact, plaintiffs concede that this claim is, "concededly, more difficult and would appear to be precluded by *Bierwirth.*" Opp. Papers at 26. Accordingly, that portion of the Seventh Claim for Relief that alleges a violation of section 406(b)(2) is dismissed.[12]

### C. Defendant Faggen

Defendant Faggen moves to dismiss those portions of the complaint that state a cause of action against him, namely the Second Claim for Relief, which alleges that "[b]y their acts and omissions ... the Trustees and defendant Harold Faggen violated [ERISA § 404(a)(1)(B) ]," *see* Complaint, ¶ 59, and the Eighth Claim for Relief, which alleges that "[i]f defendant Harold Faggen was not a fiduciary of the Pension Fund, he knowingly participated in each of the breaches of fiduciary duty set forth in the Second, Sixth and Seventh Claims for Relief," *see* Complaint, ¶ 70.[13] Accordingly, the Court must determine (1) whether Faggen was a

---

**11.** Contrary to plaintiffs' contention, the reasoning set forth in *Donovan v. Bierwirth* remains intact and has been followed by numerous courts. *See, e.g., Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1417 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.,* 567 F.Supp. 1184, 1199 (N.D.W.Va.1983), *aff'd,* 724 F.2d 406 (4th Cir. 1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). Indeed, in *Sutton,* the court stated that the requirement of a transaction "flows from the very language of the statute itself ('A fiduciary .... shall not cause the plan to engage in a transaction' ..., etc.) and is

supported by the legislative history." *See Sutton v. Weirton Steel Div. of Nat'l Steel Corp.,* 567 F.Supp. at 1199.

**12.** However, the portion of the Seventh Claim for Relief that alleges a violation of ERISA §§ 404(a)(1)(A)(i), (ii), and (B) remains.

**13.** The parties agree that the First, Third, Fourth and Fifth Claims for Relief do not apply to defendant Faggen as those causes of action are based on breaches that took place after Faggen ceased to act as a consultant to the Fund. *See* Opp. Papers at 28.

fiduciary; or, if not, then (2) whether Faggen knowingly participated in the breaches of fiduciary duty alleged in the complaint.

### 1. Claim for Breach of Fiduciary Duty

 ERISA § 3(21)(A) defines a "fiduciary" as a person who:

(i) ... exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) ... renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). On June 25, 1975, the Department of Labor issued an interpretative bulletin further defining under what circumstances a consultant is considered to be a fiduciary under ERISA. *See* 29 C.F.R. § 2509.75–5, D–1.[14] Pursuant to this bulletin, a consultant who renders services to an employee benefit plan (other than an investment adviser to the plan) is not a fiduciary solely by virtue of rendering such services, absent a showing that the consultant exercises discretionary authority or discretionary control over the plan's management, administration or assets, or renders investment advice for a fee. *Id.* Thus, a consultant who exercises no authority over a plan other than in the exercise of his "usual professional functions" is not a fiduciary. *Mertens v. Hewitt Assocs.*, 948 F.2d 607, 610 (9th Cir. 1991). *See also Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 820 (S.D.N.Y.1992) ("One who exercises actual control over disposition of assets is a fiduciary under ERISA; one who engages in purely 'ministerial' functions is not").

 In this case, the complaint alleges nothing more than that "defendant Faggen, while engaged as a consultant to the Pension Fund, consulted · with the Trustees and the Administrator in all facets of their administration of the Pension Fund." Complaint, ¶ 23. In fact, the complaint fails to allege either that Faggen exercised any degree of authority or discretionary responsibility over the plan, or that he rendered investment advice for a fee. Accordingly, the Court finds that plaintiffs have failed to state a claim against defendant Faggen for breach of fiduciary duty.

### 2. Claim for Knowing Participation in Breach of Fiduciary Duty

 Plaintiffs contend that, if Faggen was not a fiduciary, then he knowingly participated in the breaches of fiduciary duty set forth in the Second, Sixth and Seventh Claims for Relief. Complaint, ¶ 70. The Second Circuit has held that "parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciaries." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d at 280 (quoting *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220 (2d Cir. 1987)).[15] The elements of a cause of action for knowing participation in a breach of fiduciary duty include: (1) breach by a fiduciary of a duty owed to plaintiff; (2) defendant's knowing participation in the breach; and (3) damages. *Id.* at 281–282. As set forth, *supra*, plaintiffs have adequately stated a cause of action against the Trustee Defendants for breach of their fiduciary duties. Accordingly, the Court next must determine whether plaintiffs have adequately alleged knowledge and participation on the part of defendant Faggen.

**14.** "The construction by the Department of Labor, which is entrusted with the enforcement of ERISA, is entitled to considerable weight."· *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1135 (7th Cir.1986), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). *See also Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 537 (7th Cir.1991).

**15.** The Court acknowledges that the United States Supreme Court recently has expressed doubt that a nonfiduciary can be held liable for breaches of fiduciary duty under ERISA. *See Mertens v. Hewitt Assocs.*, ── U.S. ──, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The Supreme Court, however, expressly reserved decision on this question. *Id.* ── U.S. at ── ── ──, 113 S.Ct. at 2067–2068. Accordingly, the Court finds that the reasoning set forth in *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d at 280, remains the law of this Circuit.

■ The knowledge element of this cause of action can be broken down into two elements, namely (1) knowledge of the primary violator's status as a fiduciary; and (2) knowledge that the primary's conduct contravenes a fiduciary duty. *Id.* at 282–283. Although Faggen concedes that he was aware that the Trustee Defendants with whom he consulted were fiduciaries, *see* Reply Memorandum In Support of Defendant Harold Faggen's Motion to Dismiss, dated April 19, 1993, at 6, he contends that plaintiffs have failed to allege that he was aware that the Trustee Defendants engaged in breaches of fiduciary duty.

The Court finds, however, that plaintiffs' claims are sufficient to withstand Faggen's motion to dismiss. Plaintiffs allege that Faggen "consulted with the Trustees and the Administrator in all facets of their administration of the Pension Fund." Complaint, ¶ 23. The complaint alleges further that "at all times that defendant Harold Faggen was a consultant to the Pension Fund, the Trustees, or certain of them, solicited his advice and relied thereon." Complaint, ¶ 69. Such allegations are sufficient to give Faggen fair notice of plaintiffs' claims and the grounds upon which they rest.

Faggen next contends that plaintiffs have failed to allege that he participated in the Trustee Defendants' breaches of their fiduciary duties. "One participates in a fiduciary's breach if he or she affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed." *Id.* at 284. The Eighth Claim for Relief alleges that Faggen knowingly participated in the Second, Sixth and Seventh Claims for Relief. The Court thus must look to each of those causes of action in turn.

The Second Claim for Relief alleges that defendant Faggen, as well as the Trustee Defendants (1) caused the establishment of levels of pension benefits that he knew or should have known were excessive; (2) failed to take appropriate measures to alleviate the problems caused by the levels of pension benefits as in effect from time to time; (3) failed to monitor properly the Fund's financial condition; (4) failed to inform Members of problems concerning the Fund's financial condition; (5) failed to inform Members of the potential consequences of increasing the Fund's levels of pension benefits; (6) lied to Members about the financial condition of the Fund; and (7) failed to engage the services of appropriate professional consultants, or, if such professional consultants were retained, failed to utilize their services or follow their advice. Complaint, ¶ 59. Moreover, the Sixth Claim for Relief alleges that the Trustee Defendants failed or refused to collect monies from employers. Complaint, ¶ 67. Such allegations are sufficient under Federal Rule of Civil Procedure 8.[16]

■ Nevertheless, the Court finds that plaintiffs' claims are barred to the extent they seek money damages against defendant Faggen. The United States Supreme Court recently has held that ERISA does not authorize suits for money damages against non-fiduciaries who knowingly participate in a fiduciary's breach of a fiduciary duty. *Mertens v. Hewitt Assocs.,* —— U.S. at ——, 113 S.Ct. at 2072. Accordingly, plaintiffs' causes of action against defendant Faggen are dismissed to the extent that they allege claims for damages.

## Conclusion

For the reasons set forth above, plaintiffs' motion, pursuant to Rule 23(b)(1), for class certification is granted. The class is hereby defined as "all persons, other than defendants, who are participants in or beneficiaries of the Pension Fund of Local One of the Amalgamated Lithographers of America." The Trustee Defendants' motion to dismiss the Second, Third and Seventh Claims for Relief, on the ground that they fail to state a cause of action, is denied. The Trustee Defendants' motion to dismiss plaintiffs' Second, Third, Sixth and Seventh Claims for Relief, on the ground that they are time-barred under ERISA's six year statute of limitations, is granted to the extent that plaintiffs allege a cause of action that took place prior to May 27, 1986. Plaintiffs are given leave to serve an amended complaint on or before December 24, 1993, alleging causes of action against all of the defendants. *See, supra,* at 27.

---

**16.** The Seventh Claim for Relief is dismissed

for fraud against each of the defendants individually. The Trustee Defendants' motion to dismiss the First Claim for Relief is granted; to dismiss the Sixth Claim for Relief, to the extent it alleges a violation of section 406(b)(2), is denied; and to dismiss that portion of the Seventh Claim for Relief that alleges a violation of section 406(b)(2) is granted. Defendant Faggen's motion to dismiss the Second and Eighth Claims for Relief for failure to state a claim is denied. However, Faggen's motion to dismiss the Second and Eighth Claims for Relief is granted to the extent that plaintiffs' causes of action against him seek monetary damages. The parties are hereby directed to appear before this Court for a status conference on Wednesday, January 5, 1994, at 10:30 a.m.

SO ORDERED.