**Steven BABCOCK, on behalf of the Computer Management Sciences Inc., Employee Stock Ownership Plan and Trust, and himself and all others similarly situated, Plaintiff,**

v.

**COMPUTER ASSOCIATES INTERNATIONAL, INC., Jerry Davis, Anthony V. Weight, Walter Millsap, Computer Management Sciences, Inc., Donald C. White and Computer Management Sciences, Inc. Employee Stock Ownership Plan and Trust, fully and as Nominal Defendant, Defendants.**

No. CV–00–1648(ADS)(MLO).

United States District Court,
E.D. New York.

Jan. 8, 2003.

Lowey, Dannenberg, Bemporad & Selinger, P.C., by David C. Harrison, of counsel, White Plains, NY, for Plaintiff.

Sussman & Watkins, by Arthur T. Sussman, Charles R. Watkins, of counsel, Chicago, IL, for Plaintiff.

Farrell Fritz, P.C., by John P. McEntee, Walter J. Johnson, of counsel, Uniondale, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case, the plaintiff Steven Babcock ("Babcock" or the "plaintiff") alleges that the defendants Computer Associates International, Inc. ("Computer Associates"), Jerry Davis ("Davis"), Anthony V. Weight ("Weight"), Walter S. Millsap ("Millsap"), the Computer Management Sciences, Inc. ("Computer Management"), Donald C. White ("White") and the Computer Management Sciences, Inc. Employee Stock Ownership Plan and Trust (the "Plan") (collectively, the "defendants") failed to properly follow the terms of the Plan and breached their fiduciary duties to him, the Plan and other similarly situated individuals in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Presently before the Court are two motions by the plaintiff, one for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and another for permission to file a second amended complaint pursuant to Rule 15.

## I. BACKGROUND

The facts in this case are detailed in the Court's decision of February 25, 2002, *Babcock v. Computer Assoc. Int'l, Inc.*, 186 F.Supp.2d 253, 254–56 (E.D.N.Y.2002) and familiarity with that decision is presumed. Only the facts central to these motions are set forth here.

From 1991 to July 1998, the plaintiff worked at Computer Management. During that employment, he participated in the Plan which was designed to allow employees to invest in the company's stock on a tax free basis. The Plan allowed participants to periodically redirect their funds in various alternative investments other than Computer Management stock. However, the defendants did not allow such investments or create any alternative investments for the participants. In addition, the Plan allowed participants to obtain their benefits after they left their employment at Computer Management. However, the defendants have not allowed the plaintiff nor any other ex-employees to obtain their benefits.

In 1998, Computer Associates acquired Computer Management and began operating and administering the Plan. In March 1999, the Plan sold all of its Computer Management Stock. The defendants then invested those proceeds in a money market fund, where it presently remains. The plaintiff claims that ERISA and the Plan required the defendants to invest the proceeds in a diversified portfolio instead of a money market. By not investing in a diversified portfolio, the plaintiff and participants in the Plan earned a lower return on their investment.

The first amended complaint adds two defendants, Millsap, an additional Trustee of the Plan and White, the administrator of the Plan but makes no substantive changes to the original factual allegations. The first amended complaint alleges four claims. The first claim contains three theories of liability under 29 U.S.C. § 1132(a)(1)(B). The first theory is that the defendants failed to provide the plaintiff with his benefits in a timely fashion under Section 5.4 of the Plan. The second theory is that the defendants failed to provide the plaintiff with three separate investment options for his accounts as required under Section 4.9 of the Plan. The third theory is that the defendants failed to provide the plaintiff with at least one investment option for his Investment Account under Section 4.10 of the Plan. The second claim alleges a breach of fiduciary duty under 29 U.S.C. § 1132(a)(3)(B) on the ground that the defendants failed to abide by the fiduciary duties

of ERISA. The third claim alleges federal common law breach of contract on the ground that the defendants failed to follow the terms of the Plan. The fourth claim alleges a claim for injunctive relief seeking to require the defendants to operate the Plan in accordance with ERISA and the terms of the Plan.

The plaintiff now moves to certify a plaintiffs' class pursuant to Rule 23 and to file a second amended complaint pursuant to Rule 15. The defendants oppose class certification on one ground: the plaintiff has failed to satisfy the numerosity requirement under Rule 23(a)(1). The defendants do not oppose the motion to file an amended complaint.

## II. DISCUSSION

### A. The Prerequisites to a Class Action

The plaintiff seeks to be appointed class representative and seeks to certify the following class: "[a]ll persons who are or were participants in the Computer Management Sciences, Inc. Employee Stock Ownership Plan and Trust between January 1, 1998, and the present."

It is well-settled that the movant bears the burden of showing that she satisfies the four prerequisites for a class action set forth in Rule 23(a) of the Federal Rules of Civil Procedure, which provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

In assessing the instant motion, the Court must accept as true the substantive allegations in the complaint and may not conduct even a preliminary inquiry into the merits of the case. *See Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999). On the other hand, the Court must rigorously analyze for compliance with the conditions

of Rule 23(a). *Id.* The Court will evaluate the four prerequisites under Rule 23(a) which are often referred to as numerosity, commonality, typicality and adequacy.

### 1. Numerosity

■ To show that a class is "so numerous that joinder of all members is impracticable," the movant is not required to prove that joinder is impossible. Fed.R.Civ.P. 23(a); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). Also, the movant does not need to show the exact class size or its identity. *Robidoux*, 987 F.2d at 935. Rather, numerosity hinges on the "examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

In the first instance, there is a presumption that joinder is impracticable when 40 or more class members exist. *Robidoux*, 987 F.2d at 936. Nevertheless, a movant may not speculate on the number of class members but rather must provide "some evidence of or reasonably estimate the number of class members." *LeGrand v. New York City Transit Auth.*, No. 95–0333, 1999 WL 342286, at *3 (E.D.N.Y. May 26, 1999) (internal quotation marks and citations omitted). Other relevant factors include: (1) the judicial economy that will stem from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective injunctive relief that may have an effect on future class members. *Robidoux*, 987 F.2d at 936 (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* ("Newberg") § 3.05, at 143 (2d ed.1985)).

The plaintiff alleges that the class contains several hundred persons. In support of that allegation, the plaintiff submits documentation showing that the Plan contained 655 participants and approximately $25,000,000 of Computer Management stock in 1998. The defendants do not challenge this estimate. Rather, they argue that neither the plaintiff

nor the members of the proposed class exhausted their administrative remedies under the Plan and therefore lack standing to assert any ERISA claims against the defendants. Therefore, according to the defendants, the plaintiff allegedly fails to satisfy the requirement of numerosity because he and the proposed class members lack standing.

The defendants' argument is misplaced. Standing and numerosity are two separate unrelated inquiries. *See* Newberg § 2.09 (3d ed.1992) ("Care must be taken, when dealing with apparently standing-related concepts in a class action context, to analyze individual standing requirements separately and apart from Rule 23 class prerequisites. Though the concepts appear related, in that they both seek to measure whether the proper party is before the court to tender the issues for litigation, they are in fact independent criteria.... Because individual standing requirements constitute a threshold inquiry, the proper procedure when the class plaintiff lacks individual standing is to dismiss the complaint, not to deny the class for inadequate representation.").

As to numerosity, the plaintiff establishes a presumption that the joinder of class members is impracticable. In that regard, his allegation that the proposed class totals several hundred is a reasonable estimate considering the uncontested statistics that show the Plan contained 655 participants and $25,000,000 of Computer Management stock in 1998. It is also reasonable to conclude that those participants are proper class members because the allegations here are that the defendants mis-invested the assets of the Plan; failed to provide participants with the proper investment options; and failed to pay participants benefits after their termination of employment. In one way or another, each participant allegedly suffered a loss in her investment as a result of the defendants' purported acts. Accordingly, the numerosity requirement is satisfied.

## 2. Commonality

■ The commonality requirement is met if the movant's and the class members' grievances share common questions of law or fact.

Fed.R.Civ.P. 23(a); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992). "The critical inquiry is whether the common questions are at the 'core' of the cause of the action alleged." *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y.1996) (citation omitted). That some factual differences between class members may exist does not defeat the commonality requirement. *See Krueger v. New York Telephone Co.*, 163 F.R.D. 433, 439 (S.D.N.Y.1995).

The plaintiff alleges that the defendants mis-invested the assets of the Plan; failed to provide him and other participants with the proper investment options under the Plan; and failed to pay him and other participants benefits after their termination of employment. The commonality requirement is satisfied because the plaintiff's claims arise out of the same alleged course of conduct and legal theories as the proposed class members. In particular, the common questions of law and fact are: (1) whether the defendants failed to provide class members with the proper investment options under the Plan; (2) whether the defendants failed to diversify the assets of the Plan after the Computer Management stock was sold in March 1999 in compliance with ERISA and the Plan; and (3) whether the defendants failed to provide class members with their benefits in a timely fashion under the Plan.

## 3. Typicality

■ The element of typicality "is satisfied when each member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936 (citations omitted). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.*

Here, the plaintiff alleges that the defendants mis-invested the assets of the Plan; failed to provide participants with the proper investment options under the Plan; and failed to provide participants their benefits in a timely manner under the Plan. These alleged acts affected both the plaintiff and the proposed class. Accordingly, the typicality requirement is met.

#### 4. Adequacy

■ To satisfy the adequacy requirement, the movant must show that: (1) class counsel is "qualified, experienced, and generally able to conduct the litigation;" and (2) class members do not have interests that are antagonistic to one another. *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992). Counsel for the plaintiff have submitted an affidavit indicating that each firm, Lowey, Dannenberg, Bemporad & Selinger, P.C. and Sussman & Watkins, have experience litigating class action ERISA cases. Based on that affidavit, the Court is confident that counsel are qualified, experienced and able to conduct this litigation. Also, the defendants offer no proof that the proposed class members have interests that are antagonistic to one another. Nor does the Court find that there are any conflicts among the proposed class members. Accordingly, the adequacy requirement is met.

### B. Class Actions Maintainable

Having satisfied the prerequisites under Rule 23(a), the plaintiff must now show that he meets one of the subdivisions of Rule 23(b) to maintain this class action. The plaintiff argues that he satisfies each of the subdivisions: (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions of law or fact predominate over individual questions. Fed.R.Civ.P. 23(b)(1)–(3). The Court will evaluate each subdivision.

#### 1. The Risk of Inconsistent Verdicts

■ The plaintiff argues that the denial of class certification would result in the risk of inconsistent verdicts. The defendants offer no opposition to this contention. The core

claims are whether the defendants properly diversified the assets of the Plan and whether they provided alternative investment options under the Plan. To resolve these claims, the Court must interpret the Plan and evaluate the defendants' actions with regard to the Plan. Failure to certify the class could result in multiple actions regarding the interpretation of the Plan. In turn, this could lead to inconsistent rulings interpreting the Plan. *See Becher v. Long Island Lighting Co.,* 164 F.R.D. 144, 153 (E.D.N.Y.1996) (certifying a class under 23(b)(1) on the ground that the failure to certify it could result in multiple actions regarding the interpretation of a plan governed by ERISA). Accordingly, the Court finds that the plaintiff satisfies the requirements under Rule 23(b)(1).

#### 2. Final Injunctive Relief

■ Rule 23(b)(2) "was never intended to cover cases ... where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968); *Goldberg v. Winston & Morrone, P.C.,* No. 95–9282, 1997 WL 139526, at *4 (S.D.N.Y. Mar. 26, 1997). In this case, the primary claim is for damages. The plaintiff seeks to recover damages for the failure to provide him with his benefits; the failure to provide him the proper investment options; and the failure to diversify the assets of the Plan. Accordingly, the Court declines to certify the proposed class under Rule 23(b)(2).

#### 3. Common Questions of Law or Fact Predominate

■ Rule 23(b)(3) provides that a class should be certified where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa*

*Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir.2001).

The Court finds that questions of law or fact common to the members of the class predominate. For example, the two core issues are: (1) whether the defendants failed to provide class members with their investment options under the Plan; and (2) whether the defendants failed to diversify the assets of the Plan after the Computer Management stock was sold in March 1999 in compliance with ERISA and the Plan. As stated above, these two issues affect the plaintiff and all of the proposed class members. Also, a class action is superior to other available methods. Given the large number of potential plaintiffs and the commonality of their claims, certifying the class will allow a more efficient adjudication of the controversy than individual adjudications would.

Because the Court certifies this action under Rule 23(b)(3), the plaintiff must give notice to the absent class members. *See* Fed.R.Civ.P. 23(c)(2). That notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them [a]n opportunity to present their objections." *Eisen*, 391 F.2d at 568 (internal quotation marks and citation omitted). Here, the plaintiff has not provided any information concerning the kind of notice that would satisfy Rule 23(c)(2). Accordingly, the Court directs the plaintiff to submit papers within 20 days of the date of this decision detailing the kind of notice he believes is best suited to give notice to the absent class members consistent with Rule 23(c)(2).

Based upon the foregoing, the Court certifies the following class as defined in the complaint: All persons who are or were participants in the Computer Management Sciences, Inc. Employee Stock Ownership Plan and Trust between January 1, 1998 and the present. However, the Court limits the class to the following issues: (1) whether the defendants failed to provide class members with the proper investment options under the Plan; (2) whether the defendants failed to diversify the assets of the Plan after the Computer Management stock was sold in March 1999 in compliance with ERISA and the Plan; and (3) whether the defendants failed to provide class members with their benefits in a timely fashion under the Plan. *See* Fed.R.Civ.P. 23(c)(4) (stating that a court may limit a class action to particular issues); *Robidoux*, 987 F.2d at 937 (stating that a court is not bound by the class definition proposed in the complaint).

### C. Standing

The Court notes that the defendants' argument that the proposed class members have not exhausted their administrative remedies does not defeat class certification. First, it appears that the exhaustion of remedies argument would only apply to the claim seeking damages for the denial of benefits. It would not apply to the claims seeking damages for the failure to provide class members with the proper investment options and the failure to properly diversify the assets of the Plan. In the Plan, the only prescribed administrative remedy is for the denial of benefits. *See* Plan § 7.10. There is no procedure in the Plan for the failure to provide the proper investment options or the failure to diversify the assets in the Plan. *See Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 592 (2d Cir.1993) ("The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.") (internal quotation marks and citations omitted).

Second, there is case law that supports the plaintiff's contention that only the individual named class plaintiff has to exhaust his administrative remedies and he has exhausted those remedies. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (stating that unnamed class members need not exhaust administrative remedies for an award of back pay under Title VII); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D.Pa.2001) (stating that "in the context of an ERISA class action, only the *named plaintiffs* must exhaust their administrative remedies.") (emphasis in original) (citing Frank Cummings, *ERISA Litigation: An Overview of Major*

*Claims and Defenses,* SF76 ALI–ABA 353, 521 (Jan. 18, 2001)); *Laurenzano v. Blue Cross and Blue Shield,* 134 F.Supp.2d 189, 211 (D.Mass.2001) (stating that only the lead plaintiff must exhaust her administrative remedies in an ERISA class action) (citing *Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280). A leading treatise also supports this contention. *See* Newberg § 5.15 (3d ed.1992) ("When exhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement independently.").

On the other hand, neither the Supreme Court nor this Circuit has addressed the issue whether only the named class plaintiff must exhaust her administrative remedies in an ERISA class action. The Court need not decide this issue at the present time. As indicated above, there is no exhaustion requirement for two of the core claims asserted by the plaintiff. Once discovery is complete, the defendants may move to dismiss those individual claims involving the denial of benefits that they believe have not been properly exhausted and the Court can address that issue at that time. Also, the Court notes that the defendants' raised an alternative standing argument in their earlier motion to dismiss the complaint and that argument was rejected. *See Babcock,* 186 F.Supp.2d at 259.

Finally, the instant decision is a conditional certification which the Court may amend or alter before the decision on the merits in light of any changes in circumstances that make such action advisable. *See* Fed. R.Civ.P. 23(c)(1) (stating that a court may issue a conditional class certification order that "may be altered or amended before the decision on the merits.").

**D. Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182,

83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This liberality in granting leave to amend also applies to amending a complaint to add new parties. *Staggers v. Otto Gerdau Co.,* 359 F.2d 292, 296–97 (2d Cir.1966). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993).

The plaintiff seeks to add three additional Plan Trustees as defendants. The defendants do not oppose this application. Because the defendants raise no prejudice or bad faith, the Court grants the plaintiff leave to file a second amended complaint.

**III. CONCLUSION**

Based upon the foregoing, it is hereby

**ORDERED,** that the motion for class certification is **GRANTED** pursuant to Rules 23(b)(1) and 23(b)(3) and the following class is certified: All persons who are or were participants in the Computer Management Sciences, Inc. Employee Stock Ownership Plan and Trust between January 1, 1998, and the present, involving the issues of: (1) whether the defendants failed to provide class members with the proper investment options under the Plan; (2) whether the defendants failed to diversify the assets of the Plan after the Computer Management stock was sold in March 1999 in compliance with ERISA and the Plan; and (3) whether the defendants failed to provide class members with their benefits in a timely fashion under the Plan; and it is further

**ORDERED,** that the plaintiff is appointed class representative and his counsel, Lowey, Dannenberg, Bemporad & Selinger, P.C. and Sussman & Watkins, Esqs. attorneys for the Class; and it is further

**ORDERED,** that the plaintiff is directed to submit papers within 20 days of the date of this decision detailing the notification he believes is best suited to give notice to the absent class members consistent with the provisions of Rule 23(c)(2); and it is further

**ORDERED,** that the motion to file a second amended complaint adding three additional Plan Trustees is **GRANTED,** and the

134

plaintiff is directed to serve and file his second amended complaint within 10 days of the date of this decision; and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge Michael L. Orenstein forthwith to arrange the completion of discovery.

**SO ORDERED.**