Richard L. McCLUSKEY, individually and on behalf of all other similarly-situated persons, and on behalf of the Red Dot Corporation Employee Stock Ownership Plan, Plaintiffs,

v.

TRUSTEES OF RED DOT CORPORATION EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST; et al., Defendants.

No. C09–449RSM.

United States District Court, W.D. Washington, at Seattle.

April 23, 2010.

Charles H. Thulin, Ekman Bohrer & Thulin, Richard E. Spoonemore, Sirianni Youtz Meier & Spoonemore, Seattle, WA, for Plaintiffs.

David C. Tarshes, Richard J. Birmingham, Davis Wright Tremaine LLP, Michael Paul Monaco, Song Mondress PLLC, Seattle, WA, for Defendants.

RICARDO S. MARTINEZ, District Judge.

This matter is before the Court for consideration of plaintiff's motion for class certification, which defendants have opposed. Dkt. # 25. Plaintiff has also moved to be named class representative, with appointment of his counsel as class counsel. The Court has fully considered the motions and the supporting and opposing memoranda. For the reasons set forth below, the motions shall be granted.

## FACTUAL BACKGROUND

Plaintiff Richard McCluskey, a former employee of Red Dot Corporation ("Red Dot"), brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. He was a participant in an employee stock ownership plan ("Plan"), whose terms are governed by a Plan Document. Complaint, Dkt. # 1, ¶¶ 2–4. Plaintiff alleges that the Plan Document provides that upon termination of employment from Red Dot, a Plan participant is entitled to elect to receive a single lumpsum cash payment equal to the participant's non-forfeitable accrued benefit as of the valuation date defined in the Plan. *Id.*, ¶ 4. However, despite this provision and plaintiff's election to receive the single cash payment upon his termination from employment, he was offered only partial payments under a "transitional multi-year distribution policy," which would pay his benefits over a three to five-year period instead of as a lump sum. *Id.*, ¶ 5.

Plaintiff contends that defendants, the Plan Trustees, adopted this multi-year distribution policy in October, 2008, and applied it retroactively to all employees (other than retirees) who terminated their employment on October 8, 2008 or later. *Id.*, ¶ 6. Plaintiff asserts in his complaint that this policy violated the terms of the Plan, and that the Plan Trustees breached their fiduciary duty to the Plan participants by following a benefits distribution policy that conflicts with the express terms of the Plan. *Id.*, ¶ 31–33. Plaintiff seeks declaratory relief and equitable relief, as well as full benefits in a lump sum payment under the Plan, on behalf of himself and all other similarly-situated former employees of Red Dot. *Id.*, p. 16.

In moving for class certification, plaintiff asserts that the Plan Trustees amended the Plan on November 6, 2009, to eliminate the lump-sum payment as an elective option for a terminated employee. Motion for Class Cer-

tification, Dkt. # 25, p. 2 n. 2. He therefore seeks certification of a class of employees who were

> Participants of the Plan between October 8, 2008 and November 6, 2009, whose employment with Red Dot was terminated during that period for any reason other than retirement and who either (1) did not elect to receive installment payments pursuant to Section 7.1(c)(i) of the Plan Document or (2) were not offered the option of receiving a lump sum distribution of his or her account under Section 7.1(c)(ii) of the Plan Document.

Motion for Class Certification, Dkt. # 25, p. 4–5.

In order to establish that the case is eligible for treatment as a class action, the representative plaintiff must satisfy all four elements of Federal Rule of Civil Procedure 23(a), and one of the elements of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Plaintiff contends in his motion that certification is proper under either Rule 23(b)(1)(A), (b)(1)(B), or (b)(3). Rules 23(a) and 23(b) will be discussed in turn.

## DISCUSSION

### A. *Rule 23(a)*

The four requirements set forth in Rule 23(a) are: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. F.R.Civ.Proc. 23(a). These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. The burden of proving each of the requisite elements of Rule 23 is on the party seeking certification. *Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 854 (9th Cir.1982).

Before certifying the class, the Court must conduct a "rigorous analysis" into whether all prerequisites of Rule 23 have been met. *O'Connor v. Boeing North American, Inc.*, 180 F.R.D. 359, 366 (C.D.Cal. 1997). The party seeking certification bears the burden of demonstrating that all four prerequisites of Rule 23(a) have been met, as well as at least one of the requirements of Rule 23(b). *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir.1977). Failure by the plaintiffs to meet any one of the Rule 23 requirements precludes class certification. *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir.1975). However, in determining a motion for class certification, the Court does not examine the merits of the plaintiffs' underlying claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Here, only numerosity is disputed by defendant, so that is the only Rule 23(a) class certification prerequisite that the Court need analyze. The putative class proposed by plaintiff has approximately twenty-seven known members at this time.

### (1) *Numerosity*

The numerosity requirement may be fulfilled if "the class is so large that joinder of all members is impracticable." F.R.Civ. Proc. 23(a)(1). While there is no "magic number," classes of up to fifteen members, and even up to forty-five members, have been found too small to merit certification. *See, Harik v. California Teachers Association*, 326 F.3d 1042, 1051 (9th Cir.2003); *Peterson v. Albert M. Bender Co., Inc.*, 75 F.R.D. 661, 667 (N.D.Cal.1977). On the other hand, as noted in a case cited by defendants, *Sanft v. Winnebago Industries, Inc.*, 214 F.R.D. 514, 521 (S.D.Iowa 2003), the courts have in appropriate circumstances certified classes equivalent to or even smaller than the twenty-seven members proposed here. *Id.* at 533, *citing Arkansas Educ. Ass'n v. Board of Education of the Portland, Ark. School District*, 446 F.2d 763, 765–766 (8th Cir.1971) (approving class of twenty members); *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1030 (6th Cir.1977) (approving seven member class); *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir.1974) (holding that a class with thirty-five members meets the requirement); *Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D.Iowa) (holding that class of seventeen was sufficient

to meet numerosity requirement); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D.Ill. 1996) (holding that proposed class of eighteen satisfied the numerosity requirement); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D.Pa.1990) (noting that "[t]his Court may certify a class even if it is composed of as few as 14 members."); *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y.1986) (numerosity found even though plaintiffs could identify only 16 class members in the action, but numerous individuals would be affected in the future); *Dale Electronics, Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531 (D.N.H.1971) (certifying a class with thirteen members). A New York district court has observed that, "[g]enerally, courts will find that the numerosity requirement has been satisfied when the class compromises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Novella v. Westchester County*, 443 F.Supp.2d 540, 544 (S.D.N.Y.2006) (quoting *Ansari v. New York University*, 179 F.R.D. 112, 114 (S.D.N.Y.1998)).

■ Thus, the class size here is not a *per se* bar to class certification; the question is whether in a class of this size joinder of all potential plaintiffs would be impracticable. It is a long-standing rule that "impractical" does not mean "impossible" rather, impracticability means only "the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964) (internal citations omitted).

■ In assessing impracticality of joinder when the class size is not great, courts consider factors such as "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought." *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir.1982), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982); *see also* Newberg and Conte, *1 Newberg on Class Actions* § 3.6 (4th ed.2002) (stating that "factors relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic dispersement of class members, size of individual claims, financial resources of class members, the ability of claimants to

institute individual suits, and requests for prospective injunctive relief which would involve future class members."). Or, as stated by one district court, in deciding whether a case between 21 and 40 class members meets the numerosity requirement, the court should consider such factors as "(1) the judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." *Novella v. Westchester County*, 443 F.Supp.2d at 546; quoting *Ansari*, 179 F.R.D. at 114–15. This is a logical organization of the factors listed in *Jordan v. Los Angeles County* and *Newberg on Class Actions*. These factors shall be discussed in turn.

### (1) *Judicial Economy*

■ This is a very important consideration, as judicial economy is one of the two primary purposes behind class actions. "Class actions have two primary purposes: to further judicial economy by avoiding multiple suits and to protect the rights of persons who 'might not be able to present claims on an individual basis.'" *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 567 (C.D.Cal.,2008); *quoting Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D.Cal.1996).

Judicial economy is best furthered here by maintenance of the suit as a class action. The major relief requested here is a clarification of the Plan participants' rights with respect to the lump sum payment, and an injunction preventing defendants from applying the transitional multi-year policy to plaintiff and other class members. Complaint, Dkt. # 1, p. 16. This is a determination that is common to all putative class members. Resolution of these issues in one action will avoid the risk of duplicative effort by multiple judges, as well as potentially inconsistent rulings. Indeed, in order to avoid these problems, multiple cases involving one issue and the same defendants will often be transferred to one judge, and then consolidated. The result is procedural complexity that, at

least in this Court's experience, is best avoided.

Courts have found that "[n]umerosity is ... satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket." *Aguilar v. Melkonian Enterprises, Inc.*, 2007 WL 201180 at * 3 (E.D.Cal.2007), *citing In re Itel Securities Litigation*, 89 F.R.D. 104, 112 (N.D.Cal.1981). Applying this consideration here, the Court finds that the judicial economy factor weighs heavily in favor of class certification.

### (2) *Geographic Dispersion of Members of the Proposed Class*

Plaintiff asserts that three of the twenty-seven known class members live out of this district, in Idaho, Colorado and Alabama respectively, and argues that this wide dispersion would make joinder of these potential plaintiffs impracticable. Defendants, in turn, argue that "where most or the vast majority of the class members live near the situs of the action, 'no finding of geographic dispersion can be made ... and therefore this factor does not weigh in favor of a finding that the numerosity requirement has been satisfied ...'" Defendants' Opposition, Dkt. # 27, p. 10; *quoting Sanft*, 214 F.R.D. at 523.

However, despite defendants assertion that "no finding of geographic dispersion" can be made, the Court finds no *per se* rule on the number of widely dispersed plaintiffs necessary to support a finding of numerosity. Courts have found the numerosity requirement fulfilled when plaintiffs were merely dispersed across counties within the same state. *Novella*, 443 F.Supp.2d at 546 (citing cases). Here, they are spread across the United States, with two plaintiffs over a thousand miles away. Mindful of the principle that joinder need not be impossible but only impracticable, the Court finds that having three of the twenty-seven potential plaintiffs so widely dispersed, as far away as Alabama, favors class certification. This will facilitate the meaningful participation of these dispersed plaintiffs in this litigation, in furtherance of the vindication of their rights.

### (3) *Financial Resources of the Members and*

### (4) *Ability of the Members to File Individual Suits*

In their argument on the financial resources factor ("factor (3)"), the parties have focused on different aspects of the financial issue, including the ability of members to file individual suits ("factor (4)"). The Court will therefore consider these two factors together. Plaintiff asserts that the prospective plaintiffs lack the financial resources to pursue claims individually, because they have been terminated from their jobs with Red Dot, and are entitled to benefits, but defendants have withheld "all but a fraction of those benefits." Plaintiff's Reply, Dkt. # 30, p. 6. In other words, the putative class members lack financial resources to hire counsel. Defendants, on the other hand, focus on the size of the individual plaintiffs' potential claims, contending that class certification is unwarranted "[w]hen the size of each claim is significant, and each proposed class member therefore possesses the ability to assert an individual claim." Defendant's Opposition, Dkt. # 27, p. 13, (*quoting Stoudt v. E.F. Hutton & Co., Inc.*, 121 F.R.D. 36, 38 (S.D.N.Y.1988)).

The Court finds that, while individual plaintiffs may indeed lack resources to hire counsel, this type of case is generally taken upon contingency. Defendants' argument therefore better addresses the more meaningful aspect of financial resources—the relation between the size of the individual claims and the resulting incentive for attorneys to litigate those individual claims. This is the view taken by other judges in this district. *See, e.g., Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 521 (W.D.Wash. 2008). The parties here have each used the figure $75,000 as representative of the average claim in this case. Defendants assert that this is "hardly the type of *de minimus* recovery that would discourage individual class members from joining" the suit. Defendant's opposition, Dkt. # 27, p. 13 (*quoting Ansari v. New York University*, 179 F.R.D. 112, 116 (S.D.N.Y.1998)). However, plaintiff has provided evidence that no other potential class member has filed suit over

this matter, thus demonstrating that there may be insufficient incentive for others to file suit individually. Supplemental Declaration of Richard Spoonemore, Dkt. # 31. While this is not a strong showing on plaintiff's behalf, it negates any inference that may arise from defendants' argument that this is not a *de minimus* recovery at stake here. The Court finds that these two factors weigh only slightly in plaintiff's favor.

(5) *Requests for Prospective Relief that may Affect Future Class Members*

Here, plaintiffs have proposed a discrete class of members, limited in time and scope, as to which no request for prospective relief would apply. This factor thus does not require analysis and does not weigh in favor of either granting or denial of class certification.

## II. *Other Rule 23(a) Factors*

Of the four Rule 23(a) requirements, defendants have contested only numerosity. The Court has considered the parties' arguments and finds that the factors, on balance, weigh in favor of finding that the numerosity requirement has been met. The Court has also reviewed plaintiff's arguments, set forth in the motion, as to the commonality, typicality, and adequacy of representation, and finds that they demonstrate that these requirements have been met. There are questions of fact and law which are common to the class, in that defendants have engaged in standardized conduct toward the members of the proposed class. *Chandler v. Southwest Jeep–Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D.Ill.1995). Plaintiff's claims are typical of those of the class as a whole.[1] Plaintiff has demonstrated that he will fairly and adequately protect the interests of class members, and that counsel is highly qualified by his experience to do so. Declaration of Richard Spoonemore, Dkt. # 31. Therefore, the Court concludes that plaintiff has shown that all Rule 23(a) requirements for class certification have been met.

## B. *Rule 23(b)*

■ Federal Rule of Civil Procedure 23(b) provides that an action may be maintained as a class action only if one of the three following criteria is satisfied:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

F.R.Civ.P. 23(b). Plaintiff argues that certification is proper under either Rule 23(b)(1)(A), (b)(1)(B), or 23(b)(3). Defendant has opposed certification under either paragraph of Rule 23(b)(1), but has not opposed

---

1. The Ninth Circuit Court of Appeals has observed that "the commonality and typicality requirements of Rule 23(a) tend to merge". *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir.2003).

certification under Rule 23(b)(3). However, there are important distinctions between certification under Rule 23(b)(1) and Rule 23(b)(3), such that this Court cannot simply certify the class under Rule 23(b)(3) based on defendants' lack of opposition. The Court must instead determine which provision is appropriate for this proposed class.

█ Defendant argues that a an action seeking primarily monetary damages cannot be certified under Rule 23(b)(1)(A), citing *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193 (9th Cir.2001). ("Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages.") However, *Zinser* applies only where the relief sought is "primarily" monetary. *Id.* The relief sought by plaintiffs in this action is not monetary damages. Rather, plaintiff seeks a declaration that the Plan Trustees breached their fiduciary duty by acting contrary to the express terms of the Plan. A ruling in plaintiffs' favor would entitle them to a lump-sum payment of the benefits to which they are already entitled, rather than payment over time. Plaintiff does not seek compensatory damages as that term is customarily understood, and *Zinser* does not apply to preclude certification under Rule 23(b)(1)(A). However, the Court finds that certification is more appropriate under Rule 23(b)(1)(B), for the reasons which follow.

Defendants contend that certification is inappropriate under Rule 23(b)(1)(B), "which is designed to avoid the risk to absent proposed class members of inconsistent adjudication." Defendants' Opposition, Dkt. #27, p. 15. Defendants assert that certification under Rule 23(b)(1)(B) is unnecessary because there is no claim that concerns a "fixed fund" which stands to be depleted by individual members' recoveries. *Id.* This line of argument misses the mark.

█ In contrast to Rule 23(b)(1)(A), which focuses on the rights of parties opposing the class, Rule 23(b)(1)(B) focuses on the rights of unnamed class members. *McDonnell Douglas Corp. v. U.S. District Court for Central Dist. Of California*, 523 F.2d 1083, 1086 (9th Cir.1975). Class actions are permitted under Rule 23(b)(1)(B) "only if separate actions 'inescapably will alter the substance of the rights of others having similar claims.'" *Id.* (*citing La Mar v. H & B*

*Novelty & Loan Co.*, 489 F.2d 461, 466–67 (9th Cir.1973)). A classic example of a Rule 23(b)(1)(B) action is one which charges "a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

█ The relief which plaintiffs seek from defendants would ensure that an express provision of the Plan (regarding lump-sum payments of benefits) is carried out. Where, as here, the primary relief is to the Plan as a whole, then adjudications with respect to any individual member of the class would, as a practical matter, alter the interests of other members of the class. If one plaintiff were to succeed in obtaining a judgment that requires defendants to pay benefits in a lump sum, that benefit would affect everyone who has a right to disbursements from the Plan during the defined class period. Thus, the proposed class clearly falls within Rule 23(b)(1)(B), because adjudications with respect to individual class members would impact the interests of the other members not parties to this action, and could substantially impair or impede their ability to protect their interests. For this reason, classes in ERISA actions are typically certified under Rule 23(b)(1) and/or (b)(2) as mandatory, non-opt-out classes. *See e.g., Rankin v. Rots*, 220 F.R.D. 511 (E.D.Mich.2004) (certifying ERISA case pursuant to 23(b)(1)(A) and (B), and noting that a failure to certify a mandatory non-opt-out class could expose defendants to multiple lawsuits and risk inconsistent decisions); *Babcock v. Computer Associates Int'l, Inc.*, 212 F.R.D. 126, 131 (E.D.N.Y.2003); *In re IKON Office Solutions, Inc. Securities Litigation*, 191 F.R.D. 457, 467 (E.D.Pa.2000) (conditionally certifying class under rule 23(b)(1)(B), and noting that rule 23(b)(1) is not exclusively applied in limited fund classes); *Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y.2002); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D.Pa.2001); *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 153 (E.D.N.Y. 1996); *Westman v. Textron*, 151 F.R.D. 229,

231 (D.Conn.1993). As one New York District Court noted,

> Class actions are generally well-suited to litigation brought pursuant to ERISA. *See Koch*, 2001 WL 289972, at *4. In fact, the Advisory Committee for the Federal Rules of Civil Procedure intended Rule 23(b)(1)(B) to apply to an action, predicated upon a breach of trust by a trustee or other fiduciary, which affects the members of a large class of beneficiaries and who seek to remedy the breach by restoration of the trust. See Fed.R.Civ.P. 23(b)(1)(B), advisory committee's note to 1966 amendment.

*Banyai v. Mazur*, 205 F.R.D. 160, 164 (S.D.N.Y.,2002.) (Citing *Koch v. Dwyer*, 2001 WL 289972, at *4 n. 2 (S.D.N.Y. Mar. 23, 2001)).

Here, if the common threshold question of the legality of the Plan's method of computing lump sum benefit distributions were resolved in separate actions by individual class members, those adjudications could be, as a practical matter, dispositive of the interests of those class members not parties to those actions. Certification is appropriate under Rule 23(b)(1) where plaintiff claims defendants breached their fiduciary duties under ERISA, and any decision on that issue would necessarily affect the interests of other participants. *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. at 397.

Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the Plan, rather than themselves, the Court cannot allow absent participants or beneficiaries to opt out of this class. Certification under Rule 23(b)(1)(B) of a mandatory class is therefore appropriate.

## CONCLUSION

Plaintiff's motion for class certification is GRANTED. The Court hereby certifies a mandatory class under Rule 23(b)(1)(B), comprising:

> **Participants of the Plan between October 8, 2008 and November 6, 2009, whose employment with Red Dot was terminated during that period for any reason other than retirement and who either (1) did not elect to receive installment payments pursuant to Section 7.1(c)(I) of the Plan Document or (2) were not of-** **fered the option of receiving a lump sum distribution of his or her account under Section 7.1(c)(ii) of the Plan document.**

When a court certifies a class under Rule 23, the court must also appoint class counsel that will "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(4). In appointing class counsel, the court must consider (1) the work counsel has done regarding the action; (2) counsel's experience with class actions and relevant complex litigation; (3) counsel's understanding of relevant law; and (4) the resources counsel will commit to representing the class. Fed R. Civ. P. 23(g)(1)(A). A court may also consider other factors relevant to counsel's ability to fairly and adequately represent the interests of the class. Fed.R.Civ.P. 23(g)(1)(B).

Plaintiff requests that he be named as class representative, and that his counsel Richard Spoonemore and Charles Thulin be appointed to represent plaintiffs' class in this action. The Court has reviewed the Declaration of Richard Spoonemore and is confident in the collective and individual abilities of Mr. Spoonemore and Mr. Thulin to fairly and adequately represent the class. Together counsel have over a decade of class action and ERISA litigation experience. They also have adequate resources to pursue an action of this nature. Declaration of Richard Spoonemore, Dkt. # 26. The Court accordingly designates Mr. McCluskey as class representative, and Mr. Spoonemore and Mr. Thulin as class counsel in this action.